21-10211, Jane Doe v. Chiquita, I see that we have Mr. Herz here for the appellant and Ms. Murphy here for the appellee, and, or do you, Fandora Murphy, you prefer the double name? Okay, very well. And, Mr. Herz, at your convenience, whenever you're ready. Good morning, Your Honors, and may it please the Court. The question here is whether 457 victims whose family members were murdered by paramilitaries funded by Chiquita and were part of a timely class action against Chiquita may proceed with their claims, and the answer to that question is yes. The District Court erred by dismissing on four nonconvenience grounds for three reasons that I'd like to talk about today. The first is, under both New York, excuse me, New Jersey and federal law, the class action told the limitations period. The District Court erred by instead looking to Columbian law, and that was error because courts apply their own administrative rules to determine how to manage their own dockets, and a class tolling rule is a rule of judicial administration because it protects courts from unnecessary violence. Separate from the class tolling issue, the plaintiffs that timely sought to amend in their complaints are protected by the substantial compliance doctrine in Columbian, federal, and New Jersey law because they timely notified Chiquita of their claims. And third, wholly apart from tolling at all, in Columbia, there is no statute of limitations for crimes against humanity. The Gomez-Geraldo case, which was decided or printed after the briefing before the District Court is directly on point on that, and because there is no statute of limitations at all for civil claims that arise out of crimes against humanity, the analysis in this case can actually start and end with Gomez-Geraldo. Let me ask you this, so on the American pipe issue, what do you do with the fact, or how do you answer the fact that the majority of circuits that have sort of addressed this question have gone the other way? So we look to this court's opinion in Esfeld, which set the standard for determining the outcome. And what the court said is that a unique supervisory interest in the management and administration of Article III courts trumps state law. We think that standard is binding here, that standard answers the question because class action is an administrative rule. Sort of at the third step of the Esfeld analysis, you know, sort of is there a conflict? Is it outcome determinative? And you're saying at step three, there's a sufficiently important federal interest that would control even over an outcome determinative? Yes, but we're also saying that there's no conflict here because New Jersey law and federal law are the same. Both recognize class. Let's assume for the purposes of the question, we would view the choice of law determination that you look to Colombian law as correct. And further, let's assume for the purposes of the question, so we can get really to the heart of this. Let's also assume that it's outcome determinative. Let's just assume for the purposes of my question that Colombian law would not allow, or at least there's nothing in it. It's at best silent. It's a civil law country, and it'd be a big jump to say they're likely to create equitable tolling. It's possible. You can make an argument. It's not a bad argument the professor makes, but it's a stretch. So let's just assume, A, we're looking at Colombian law on the issue. B, there's no Colombian law that says anything other than 10-year statute of limitation. C, federal law, federal rule of procedure, Rule 23, clearly collides. D, it's outcome determinative. And E, as my colleague raised, the bulk of the case law, circuit case law, goes the other way. I think you're right. You can distinguish some of the cases because they're not quite on point, but some of them are, it seems to me. Tell me why they are wrong and we ought to say that the rules of efficiency surrounding class actions are so compelling that we ought to use that to trump, if you will, the outcome determination, which would go the other way. Well, let me give two answers to that. I know you would disagree with a number of the premises of my question, but I really want you to go to the heart and the time that we have of what's really, I think, at issue here. So let me address two things, New Jersey law and Colombian law. On New Jersey law, New Jersey follows the traditional rule that it applies its own administrative rules. It says that in the North Bergen case and then in the Staub case that establishes class tolling. It talks about all the administrative interests in judicial efficiency that require a class tolling rule. And it specifically says that class tolling and the class tolling device, that class tolling is a procedural device. And that means it falls within North Bergen. But let's assume that you, for the moment, disagree with me on that. And you think- I'm prepared to accept that New Jersey law might be consistent with the federal rules of procedure. I'm just saying, if you use choice of law in New Jersey, you're down to Columbia. Right, so- Let's just say, square conflict. Federal rules of procedure, class action rule 23, Colombian law, no such thing as equitable tolling. Start with that. Okay. So New Jersey- Tell me why the cases that suggest that you would defer to the foreign sovereign's determination on statute of limitations should govern. New Jersey would not conduct a statute of limitations analysis at all. It would just say, this is an administrative rule, and therefore we apply our own rule. If it looked to Colombian law, the principle that it would apply, there's two ways to look at it. But one of the principles that would apply is what this court said in Freedman, which is the general rule that if a foreign law is, quote, not fully settled or addressed, you apply the forum law. And the New Jersey follows that rule too. Let me talk about what Columbia law actually does. So in Columbia, for a group action, there's a two year statute of limitations to file a group action. And then within 10 days, the court determines whether the group action can go forward. And after that, there is a statute of limitations for individuals that's 10 years long. Which means that Colombian law protects individuals who are in the class, in the group, from ever having their claims dismissed on statute of limitations grounds while the class is pending. Because after the court determines that it is not pending, there is eight years left to file the claim. So there's two ways you can deal with that fact. I think the best way to deal with that is to say, look, Colombian law protects these kinds of plaintiffs. It doesn't do it in the same way. But if you're going to look to what Colombian law does, the answer is, it protects these plaintiffs. The other way to look at it is that Colombian law never addresses the question of, is there class tolling? Because it never comes up. Colombian law protects it some other way. And if Colombian law never addresses the issue of whether there's class tolling, you have to apply New Jersey law. Because in a choice of law analysis, you don't make up what foreign law would be. What you can't do is what the district court did. And that is to say that there's no law in Colombia, and we are going to presume you would lose. Because as a matter of fact, Colombian law protects these plaintiffs. So you can't presume that it wouldn't. Let me briefly, the other reason that Colombia- What I was asking you to do was to assume for the purpose of my question that there's a conflict between Colombian law on the one hand and the federal rules of procedure on the other. It's outcome determinative. I want you just to assume that Colombia would apply a 10-year statute of limitations it would not toll. Period. Let's just assume that. Tell me why under those circumstances where it's outcome determinative, the federal rules should govern here. Because at that point, you would get to the third prong of S field. That's where I want you to tell me why you think you're right. Because a class action rule is very different from other tolling rules. It's all about protecting the courts. It's all about if you didn't have a class tolling rule, what would happen is everybody would flee the class. They would have to file individual protective actions. And that's exactly what the class action mechanism is meant to prevent. So class action tolling encourages plaintiffs not to file. And that's what these plaintiffs did. They followed the New Jersey and federal encouragement not to file their claims. Because federal courts don't want to have them before them for efficiency purposes. What class action tolling says is you are already in the case. The defendant is already on notice of your claims. And therefore, don't file these claims. And that's the federal interest of avoiding all these different unnecessary protective files. But so didn't the Fifth Circuit recognize in Weatherly, yeah, there is this strong sort of federal efficiency interest in tolling, but not strong enough to overcome competing state interests, at least where they're articulated clearly in the statutory law of that forum. Which by analogy here, I would guess that we sort of have that, right? I mean, Columbia has said, we have some tolling rules, suspension, interruption, the things that you mentioned. And so just by way of analogy, why wouldn't we say, yeah, the Fifth Circuit said if you look to the forum, and it cares enough about tolling to enact tolling rules, then that policy judgment sort of countermands the federal interest in efficiency? Well, the first part of the answer would be that Esfield applies a different analysis. Esfield says that the federal interest in the management of the federal interest, the And where the Fifth Circuit said, well, we're going to balance the interest. And we just think that that's a different analysis. We think that this court, if this court applies the Esfield standard, you have to come to the conclusion that federal law applies. But I guess the larger point is that you don't have to answer that question of whether, in the abstract, of whether federal law or New Jersey law should apply. Because New Jersey's going to apply the same rule. New Jersey is not going to look to a Colombian rule on how to manage a class action within its own jurisdiction, because it's an administrative rule. OK. Very well. I took you past. But it's no sweat. You've got your full rebuttal time remaining. Thank you. All right. Very well. Ms. Vendora Murphy, let's hear from you. May it please the Court. Good morning, Your Honors. My name is Melissa Vendora Murphy. I'm here with my colleagues, Michael Chiaffi and Frank Dante. And we represent Defendant Appali Chiquita Brands International. I'd like to start with the argument that American Pipe is an administrative rule or derived from Rule 23. The Supreme Court rejected that contention in California Public Employees Retirement Systems v. ANZ, a 2017 case that appellants failed to address in their briefing. In that case, the Supreme Court reviewed the reasoning and holding of American Pipe and specifically rejected the argument that the doctrine espoused in American Pipe is derived from Rule 23 or any federal rule of procedure or statute. Rather, it is a judicially created equitable tolling exception to statutes of limitations derived from an exercise of the court's traditional equitable powers. And as such, it can only apply in appropriate circumstances. In that case, for instance, the Supreme Court held that American Pipe could not apply to toll a statute of repose, even though it was a federal claim in that case. In 2018 in China, Agritech, the Supreme Court once again referred to American Pipe as an equitable tolling exception to statutes of limitations. It also again rejected the contention that is derived from Rule 23 and stated that it can only apply in, quote, limited circumstances. In that case, the Supreme Court held that American Pipe could not apply to toll successive class actions. This is exactly why American Pipe does not apply in a diversity case. It has long been the law for 75 years since Guarantee v. York in 1945 that a federal court sitting in diversity cannot exercise its traditional equitable powers to extend a state claim brought under the court's diversity jurisdiction. The statute of limitations issues are substantive under an Erie analysis. Therefore, a federal district court must look to state law to determine statute of limitations. And this necessarily includes tolling rules. As the court held in Guarantee v. York, whether or not the New York statute of limitations would be lengthened or shortened was a matter of local law to be respected by the federal district courts. The appellants refer to Esfeld, this court's decision in Esfeld. That decision, this court was analyzing whether federal or state forum nonconvenience laws would apply. The court specifically noted in that opinion that that was an open question, that the Supreme Court had not ruled on that specific issue. This is not an open question. Supreme Court has already held that statute of limitations and tolling provisions are substantive under Erie and that the court must look to state law. Let me ask you a quick question about Esfeld. Because I think Mr. Herz and I may just read it differently, but he said in response to a question that I asked that if you get to the third step of the Esfeld analysis, then the recognition of a federal interest in efficiency sort of is a trump, is conclusive. And that makes our analysis different from the Fifth Circuit's analysis in Weatherly. I guess I hadn't read Esfeld that way. Do you read Esfeld's third factor step as sort of a full stop kind of analysis or is there some weighing that still occurs at step three? No, you're on. I would respond that I don't think Esfeld, the Esfeld analysis is required here because this isn't an open question under the Erie doctrine. The courts have already determined that the federal court must look to the state court to determine issues of statute of limitations and tolling rules. So you wouldn't get into an Esfeld type analysis in this circumstance. I think the- Let me ask you in that regard, isn't this in the Fifth Circuit case, they were dealing with a clearly pronounced state rule announced by the legislative body basically rejecting class tolling as existed otherwise in the federal system. They examined it. They determined it. So the state interests were as weighty as they could be because there was a clear expression of those interests. Is there not a difference here? If you look at Columbia law on it, whatever else you'll say, we're looking at a civil law country. The backdrop is very different. There's a statute of limitations. It's 10 years, but it is silent on this question of equitable tolling. It's not as if the legislature, the legislative body there reflected on the issue and concluded like had obtained in the Fifth Circuit issue and said, we're rejecting equitable tolling. It's not consistent with a civil law country where we derive our rules from statute rather than from case-based doctrine. Isn't that difference of some moment here or am I missing that?  I believe in Weatherly, the court was looking to Florida law and there was statutes on point and in Florida, the tolling rules are codified. So in some ways, it's very similar to Columbia. And there are other instances where courts have looked to state law where tolling rules are codified in statutes and the court is not free to extend what the legislature has already enacted in terms of when tolling is appropriate. That's very similar to the circumstance that's found in the Columbian code. In fact, I think the fact that there is a shorter statute of limitations in Columbia for class actions, that demonstrates the policy consideration of Columbia, which is that an individual is not to rely on a class action mechanism. They must decide whether they are going to be part of the class and rely on the class action mechanism or pursue their individual claim. And if they're going to pursue their individual claim, they must file within the 10-year statute of limitations. It is a lengthy statute of limitations. So under Columbian law, I think it demonstrates that an individual must file their claim within 10 years, notwithstanding the prior penancy of a class action. So what's the analogy here? I guess this circles back to a question I asked Mr. Hurst. But so what's the analogy here to the Florida law in Weatherly that had sort of expressly rejected tolling in these circumstances? What are the Columbian analogies? It sounded like you were about to go there, and then you sort of said, in any event, we know sort of how the statute of limitations itself operates. But what has Columbia done to reject tolling? Is it, as I guess I suggested earlier, that Columbia has these rules about suspension and interruption? And so we've got the Columbian legislature has made a choice to toll in these two instances and by negative implication, no others. Is that the idea? That is the idea, Your Honor. I think in Weatherly, I don't think there was a federal pronouncement necessarily rejecting class tolling. There wasn't a controlling Florida Supreme Court case. It was looking to the statutes to see whether or not the legislature contemplated or provided for this type of tolling. And in Columbia, as you know, there are instances where a statute of limitations may be suspended or may be interrupted. And those circumstances are expressed in those statutes. And none of those circumstances would apply to this circumstance. I mean, in particular, the appellants point to the interruption statute. And that statute would not save the claims here because, again, even if the statute restarted, it would still be untimely at this point. These are excessively untimely claims. Let me ask you something on a slightly different subject. I want to make certain I understand your position. Is it that amendment to add facts supporting minority tolling would be futile, or do you think that the plaintiffs just didn't meaningfully raise this argument? Not certain I completely understand your position. Thank you, Judge Cuffington. Yes. On the minority tolling issue, when the district court was analyzing Chiquita's motion to dismiss, it was required to look to the face of the complaint. That's a proposition this court has stated many times. And there was nothing, no allegations on the face of the complaint that suggested that any plaintiff was a minor. It was clear from the face of the complaint that the claims were time barred, and there were no facts pled to get around that time bar limitation. So the district court was correct to grant Chiquita's motion in that instance. The appellants raised minority tolling in a two-sentence passing reference in their They didn't say how many. They didn't identify them or anything. They actually said they didn't need to plead facts to get around. They admitted in that brief that you could not determine that from the face of the complaint. The plaintiffs then filed a motion to alter or amend the judgment under Rule 58. And under that standard, that's a clear standard, excuse me, the abuse of discretion standard applies to that motion. And the court there was right to, again, deny that motion because, as this court has stated, Rule 58 is not an appropriate vehicle to present evidence or raise issues that could have been presented prior to the entry of judgment. And that's exactly what the plaintiffs were attempting to do here. That was the first time that they specifically raised the issue of 39 individuals that might benefit from minority tolling. There was no clear error in the district court's original opinion. There was no change in the law. There was no new evidence. And even beyond that, when the plaintiffs proposed an amended complaint on that issue, they still failed to present appropriate facts that would toll, that would set forth a basis for minority tolling. All they pled there was that these individuals were minors 10 years prior to the commencement of the action. That's not a sufficient amount of information. Why is that not enough? I don't think I quite understand that. Yes. The reason it's not enough, Your Honor, is because in Colombian law, there is a limit to suspension. So this falls under the suspension statute. And under that suspension statute, after 10 years, the suspension will not be recognized. So you need to understand the age that the plaintiff was at the time of injury, when they turned 18, how much time they would have left under the suspension statute, and how much time is left under the statute of limitations. You cannot simply determine that. It doesn't suspend the statute necessarily until they're 18. It suspends it for a period of 10 years. Now the plaintiff would always become of majority status, because it's a 10-year statute of limitation. So it's not that claims would be foreclosed against a minor. It's that once they reach the age of majority, they don't necessarily have a full 10 years. They might have two years, five years, seven years. It all depends on when they turn 18. And here, the district court was correct to note that the plaintiffs did not provide sufficient information to do those calculations and to determine how much time was left for any one of those individual plaintiffs. I'd like to go back, if I could, to this collision between the equitable tolling recognized by the Supreme Court. The Supreme Court tells us in American Pipe, in no unmistakable way, that if you didn't adopt equitable tolling, there would be a powerful risk that putative class members would be compelled to file either an intervening motion or their own claim independently in order to avoid being shut out by the statute of limitations if the certification were denied too late. The Supreme Court tells us in American Pipe that this is a really powerful concern, because it would, in essence, undermine the efficacy of the procedures wrapped up in Rule 23 aggregation. That doesn't necessarily mean it outweighs a state's determination, but it doesn't mean it ought not to either. I want you to tell me why, given the centrality of this concern about the efficiency of class procedures being powerfully undermined, if every putative class member not named in the complaint would be compelled to file his or her own action, whether by way of intervention or independently in another forum, doesn't it really undermine the efficacy of the whole idea behind aggregation under Rule 23? No, Your Honor, I don't think it does, because again, even in American Pipe, the Supreme Court noted that the doctrine espoused there does not necessarily always apply. For instance, it doesn't apply when a plaintiff sleeps on their rights. It is an equitable doctrine that only applies when appropriate. The other thing to note is that Rule 23 itself, the actual text of Rule 23, states that a plaintiff should move for classification and the court should decide it at the earliest practicable time. That is what would, I think, Your Honor, address some of your concern there. You see, the thing about that is that any good district judge who's handled class actions over the years understands what the circuits have repeatedly said in the Supreme Court, that every determination on class certification is always tentative until the final bell, and it frequently changes. A judge may grant certification and then turn around and reject that conclusion based upon additional evidence, or vice versa, may deny it and then grant it, or grant it and then create a subclass or a series of subclasses because you didn't get it quite right at the first shot. So this is sort of a ball that's in motion until literally the final bell is rung. Doesn't that undermine sort of the argument you're making? That is to say, the argument you're making, and it's an interesting one, is that the putative member's rights are otherwise protected anyway. But that assumes that the class certification is frozen in cement, doesn't it? No, Your Honor, I don't think so. I think what you're expressing is quite similar to the dissent in California Public Employees Retirement Systems, the ANC, this idea that class certification doesn't often happen as a practical matter until several years into a case. But what the court held in that case was that you had to look to where the power to create this doctrine actually arose. And because it derives from the court's equitable powers, the court does not have the power to toll a state claim in that instance. If the legislature had said something about class tolling in the text of Rule 23 or in a federal statute or something of that nature, that might be a different analysis in that instance. But I would say that, again, under the facts of this case, where you have plaintiffs that filed claims in 2007, along with 7,500 other individuals who all filed individual claims, then they waited 12 years to file a motion for class certification. Indeed, the district court noted that it would be very reasonable to deem class certification waived or abandoned at that point. In fact, the plaintiffs argued that they shouldn't have to move for class certification until after the first bellwether trial. In that type of circumstance, it was unreasonable for plaintiffs to wait that long, past the 10-year statute of limitations, before they even filed a motion for class certification. If I understand what you're saying, even if we were to agree with the appellant that as a general matter, the federal interest should outweigh the interest of the foreign sovereign Columbia here for risk of multiple interveners, we ought not to apply it here because they don't come in here with clean hands? I think that is part of it, Your Honor. I think the district court had to look to see whether these claims would be timely in this case. This is well past the 10-year statute of limitations. There's nothing under ERIE analysis looking to Colombian law. There's just nothing that would save these untimely claims. That protects the federal interest because, again, under ERIE, one of the issues is forum shopping and to find a contrary result would increase federal class action. There are countervailing federal interests beyond simply the efficiency of Rule 23. There are broader interests that implicate federalism, concerns of federalism, concerns of forum shopping in the federal court. There's a lot at play here, but I think under the Supreme Court's long, long holdings with respect to statute of limitations and tooling, that is what controls here. One final question I have that maybe you can help me with. Does it make a difference in the analysis that we're not weighing the interests of Rule 23 against the state legislature? That's spoken with clarity. We're weighing the interests of Rule 23 on efficiency, et cetera, against the foreign sovereign and a foreign sovereign that's actually a civil law country where the notion of equitable tolling is really alien, where they take their rules from what's codified by the legislative body rather than also taking their rules from a body of case law. Is there a difference there that we should take into account, or should we treat the Colombian sovereign's interests just like we would treat the interests of the legislature in Florida or Texas? That's an interesting question, Your Honor. I think either way, as you note, because it is a civil law country, the legislature has spoken and has codified when and when not a statute of limitations can be told. As you note, there are examples in the United States where the legislature acts the same way, where it is more of a civil code type state and many of the rules are codified as opposed to another state where there's much more common law developed through case law. I think in either way, in either circumstance, you have to, the federal district court is required to respect the . . . The reason I ask is the only state that comes to mind with really a civil law body would be Louisiana. Other than that, I don't think any of the other 49 jurisdictions don't follow common law as well as statutory law given by the legislative body. I think that's a fair point, Your Honor. I think there are other examples, though, of states where there is a lot that is codified. I think Missouri might be another example. I think the Eighth Circuit looked to Missouri law in the Thomas case and found very similar to Weatherly that they looked to the statute and it's not in the statute, therefore, it doesn't apply. I think there are other examples of that. I think under the principles of ERIE, the federal court has to apply, respect the state court, the court of whatever other jurisdiction it is, whether it's the state legislature or foreign. I think it's an interesting point that when you're dealing with issues of comity between the United States and a federal government, that might actually implicate a greater reason to defer to that foreign sovereign's interests. I do think that that is a good point as well. Okay. Very well. Sorry for carrying you over. Thanks for answering the court's questions. Mr. Herz, you've got five minutes of rebuttal time remaining. Thank you, Your Honors. Thank you. Thank you, Your Honors. I guess I'd like to start with some of the concerns that Judge Marcus raised. The bottom line is that if there is no clear rule of protection for plaintiffs in the class, they'll flee the class and they will flood the courts. That doesn't change whether they're state claims or whether they're federal claims. In this case, there's an additional federal interest that I think distinguishes this from every other case that other circuits have heard, which is that there were federal claims in the initial class action. And so, in a case where there's both federal claims and state claims, if you adopt a rule that the state claims are not protected, again, all the class members will flee the class and they're going to bring their federal claims with them. And at that point, there's no doubt that you're undermining exactly what American Pipe says because at that point, you will have a flood of federal claims in federal court that could have been brought into class. Now, that's the first stage of the analysis. If you think, well, maybe we can't apply American Pipe here, the second stage of the analysis is New Jersey law. And for many of the same reasons that Judge Marcus was alluding to, New Jersey law is not going to look outside its own borders to determine how to manage a class in state court. It's an administrative rule. The traditional rule that New Jersey follows, and I think every other state follows, is that you apply your own procedural rules. And New Jersey has already said that class tolling is a procedural rule, and so New Jersey would apply it. If you went beyond that and wanted to ask about what Columbia would do, I think there's three things to keep in mind. The first thing is that Colombian law protects absent class members, as I alluded to before, by this differential statute of limitations. The second point is that it's important to remember that Columbia is a post-conflict society that is still wrestling with the trauma of decades of civil conflict. And that suffuses all of its institutions, but in particular, the legal system, in any number of different ways, is trying to wrestle with that. And they said two things in the Gomez-Geraldo case. The first is that procedural rules have to fall. Ordinary procedural rules have to make room to ensure that victims of crimes against humanity or other human rights abuses have access to justice. That's critically important in Columbia because that is the legal system's mechanism for helping society recover from the trauma. And the second thing is a more specific rule. This more specific rule is that crimes against humanity in Columbia don't have statutes of limitations at all. And what the court said about that, I want to quote, and it's at our addendum at page 38, is in cases involving events classified as crimes against humanity, civil liability actions that guarantee responsibility for the victim are not subject to statutes of limitations. That was a case for damages. They made the same argument. The original court overturned it, said that the claim could not go forward on statute of limitations grounds. And the Court of Appeals, in the opinion that I just read from, overturned that and said, there is no statute of limitations for damages for claims arising out of crimes against humanity in Columbia. Your colleague makes an interesting observation, though. She says, even if you were right, as a general matter, that the interest the Supreme Court is protecting in American hype might trump the interests of a foreign sovereign's rules. In this case, since we're sitting in equity, your clients have sat on their thumbs, they've sat on their rights for so long that this wouldn't be the appropriate case to utilize that principle of equitable tolling. So what happened in this case was, you know, the class action was filed in 2007. The next 10 years, all the way until the end of 2016, were entirely consumed with motions to dismiss, threshold motions. There was an interlocutory appeal. It came back from the interlocutory appeal. They raised a forum nonconvenience motion that addressed the question of whether this case should be heard in Columbia or the United States. So until the end of 2016, nobody even knew where, when the court rejected their forum nonconvenience motion, nobody even knew where this case was going to be heard. On top of that, the Crown Court Conceal has specifically said that a plaintiff who relies on or an absent class member who relies on the class is not sleeping on its rights. They want to go against that and say that these plaintiffs did, but they didn't. There was nothing they could have done. These were absent class members. They couldn't have moved for class certification, and they relied on the class, which is exactly what New Jersey law encourages them to do, and it's what federal law encourages them to do. Can I ask you one question just to shift gears? Will you take one minute to address the argument Judge Covington and I were asking your adversary about minority tolling? Just so respond to the argument that she makes that the allegations in the proposed amended complaint still are not good enough. I mean, I think what I'll say is I think reflecting what I gathered you were thinking, I don't want to put words in your mouth, but all you need to know in a minority tolling circumstance is so you have a 10-year statute of limitations. Did they file within 10 years after the date that the plaintiff reached their majority? These plaintiffs did. If you want to know their birthday, all you would learn is if they filed here, you would learn how much time after the period of time that they have, how much additional time they had. But by saying that, so we said that we filed these claims on March 25th, 2020. The complaint alleged that on March 25th, 2010, everybody was a minor. So on March 25th, 2010, everybody's a minor. The earliest time that anyone could have reached their majority was March 26th, 2010. Ten years later is March 25th, 2020. And that's when we filed. And that's all you need to know. Okay, very well. Thank you so much. Thank you. We appreciate the help from both sides. That case is submitted.